**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| TAMMY M. WHALEN, | ) | CASE NO. 1:24-CV-01928-SL |
| | ) | |
| Plaintiff, | ) | JUDGE SARA LIOI |
| | ) | |
| v. | ) | MAGISTRATE JUDGE |
| | ) | CARMEN E. HENDERSON |
| COMMISSIONER OF SOCIAL | ) | |
| SECURITY, | ) | **REPORT & RECOMMENDATION** |
| | ) | |
| Defendant, | ) | |

## I. Introduction

Plaintiff, Tammy M. Whalen ("Whalen" or "Claimant"), seeks judicial review of the final decision of the Commissioner of Social Security denying her application for Disability Insurance Benefits ("DIB"). This matter is before me pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3), and Local Rule 72.2(b). For the reasons set forth below, it is RECOMMENDED that the Court OVERRULE the Commissioner's non-disability determination and that this matter be REMANDED pursuant to Sentence 4 § 405(g).

## II. Procedural History

On September 9, 2022, Whalen filed applications for a period of disability, Disability Insurance Benefits ("DIB"), and Supplemental Security Income benefits ("SSI") alleging disability since December 31, 2015. (ECF No. 7, PageID #:179-191, Exs. 1D, 2D). The applications were denied initially and upon reconsideration, and Whalen requested a hearing before an administrative law judge ("ALJ").  On September 26, 2023, an ALJ held a hearing, during which Claimant, represented by counsel, and an impartial vocational expert testified.  (ECF No.  7, PageID #:59).  On, November 20, 2023 the ALJ issued a written decision finding Whalen

1

was not disabled.  (ECF No. 7, PageID #:41).  The ALJ's decision became final on September 13,

2024, when the Appeals Council declined further review.  (ECF No.  7, PageID #: 28).

On November 5, 2024, Whalen filed her Complaint to challenge the Commissioner's final

decision.  (ECF No. 1).  The parties have completed briefing in this case. (ECF Nos. 8, 10). Whalen

asserts the following assignments of error:

1. The ALJ erred when she failed to support and/or address consistency with her
   conclusions regarding the opinions of the treating and reviewing sources.

2. The ALJ erred at Step Five of the Sequential Evaluation when she found
   Plaintiff could perform work at the light level of exertion.

(ECF No. 8).

## III. Background

### A. Relevant Hearing Testimony

#### 1. Whalen

The ALJ summarized the relevant testimony from Whalen's hearing:

At the hearing, the claimant testified she last worked in April 2018 but left the
position and has not worked since that time due to limited walker [sic] and lifting
capabilities. She has chronic pain affecting her back and hips and generalized joint
pain treatment with anti-inflammatory medication and physical therapy that was of
no benefit. The claimant also has had injections which were of short-term benefit.
She had difficulties using her arms and hands such as lifting her grandchild and
opening jars and taking small pills. She could not write or type longer than 5
minutes without experiencing numbness. Since 2018, the claimant also has had
lower extremities swelling status post surgeries requiring her to elevate her legs
above heart level. She underwent hip, shoulder, and knee replacements due to bone-
on-bone arthritis.

During the relevant period, her ability to perform self-care and household chores
also deteriorated from performing such tasks with breaks to relying on her daughter
and husband for help. Mentally, the claimant has had anxiety and depressive
symptoms including fatigue, poor focus and concentration, low motivation,
isolation, and sleep disturbance. She has been diagnosed with a severe panic
disorder worsened in public settings. The claimant has had individual and group
therapy and takes psychoactive medication.

2

(ECF No. 7, PageID #: 49-50, Tr. at 22-23).

### 2. Vocational Expert

The ALJ asked the vocational expert to consider the following hypothetical:

> assume an individual of claimant's age, education and work experience and if you could please assume that this hypothetical individual can lift and carry, push and pull occasionally 20 pounds, frequently 10 pounds stand and/or walk for four hours out of eight hours, sit for six hours, and can occasionally climb ramps and stairs, never climb ladders, ropes and scaffolds, occasionally balance, stoop, kneel, crouch, never crawl. This individual can never be exposed to hasards [sic] of unprotected heights and dangerous machinery.

(ECF No. 7, PageID #: 89, Tr. at 62). The vocational expert testified that such an individual would not be able to perform Whalen's past work but would be able to perform the work of a price marker, cashier II, and small parts assembler. (*Id*. at PageID #: 89–90, Tr. at 62–3). Whalen's attorney then asked if an additional limitation of reaching in all directions to occasional on the right-hand side would be work preclusive. (*Id*. at PageID #: 90, Tr. at 63). The vocational expert opined that such a limitation would be work preclusive. (*Id.* at PageID #: 91, Tr. at 64). Upon further inquiry from Whalen's counsel, the vocational expert opined that a limitation that the individual required a foot stool to elevate her legs throughout the day would not be work preclusive, but that if the individual was required to elevate higher than a footstool, such limitation would be work preclusive. (*Id.* at PageID #: 92–3, Tr. at 65–6). The vocational expert also opined that if the individual would be off task more than 25% of the time, such a limitation would be work preclusive. (*Id*. at PageID #: 93, Tr. at 66).

### B. Relevant Medical Evidence

The ALJ also summarized Whalen's health records and symptoms:

> Turning to the record shows the claimant in this case does have a history of multifactorial pain (Exhibit 3F at 150). Complaints of generalized joint pain – as much as 10/10 (Exhibit 3F at 46) – primarily affecting the neck and both shoulders and the lower extremities from the hips, worse on the right, to the feet as well as

3

the low back with radicular-type symptoms to the legs, greater on the left (Exhibits 1F at 218, 249, 338, 349 / 2F at 20 / 3F at 46, 150, 170 / 4F at 40) have been attributed to osteoarthritis (Exhibit 1F at 178), a long history of lumbago with sciatica (Exhibits 1F at 257, 361 / 2F at 22), lumbar radiculopathy (Exhibit 2F at 17), and restless leg syndrome (Exhibit 1F at 364) resulting in allegations of limited mobility, reaching, and lifting capabilities (Exhibits 1F at 241 / 3F at 9, 150, 187).

Imaging taken of the claimant's lumbar spine shortly before the alleged onset date in September 2015 revealed multilevel degenerative changes with disc protrusion at L3-L5 (Exhibit 1F at 242, 244). Moreover, multiple x-rays performed in March 2019 showed extensive arthritic changes throughout the joints of both hips and both shoulders in addition to moderately advanced degenerative arthritis of the knees (Exhibits 3F at 64-72, 74, 178, 214). CT scans and imaging during that time also confirmed significant bone-on-bone osteoarthritis of the right shoulder with a partial rotator cuff tear (Exhibit 3F at 97, 199). Consequently, the claimant required evaluation from a rheumatology and orthopedic standpoint (Exhibits 2F at 5 / 3F at 131). Surgical intervention was offered for her severe right shoulder arthritis (Exhibit 1F at 161) and she did undergo bilateral hip replacements in May and September 2022 (Exhibits 5F / 11F) and has been scheduled for a right total knee arthroplasty after doing "remarkably well" with her hip surgeries (Exhibit 9F). Nonetheless, during the period at issue in this case, measures in treatment for the claimant's diffuse pain complaints remained entirely conversative and included steroid packs, topicals, physical/aquatic therapy, epidural injections, anti-inflammatory/narcotic/neuralgic medications, and muscle relaxants (Exhibits 1F / 2F / 3F / 4F). Lifestyle modifications of diet and regular aerobic exercise also have been advised as, at one point, the claimant's body mass index (BMI) was indicative of class III obesity (Exhibits 1F at 136 / 2F at 17 / 3F at 189)

The claimant also has a longstanding history of asthma (Exhibit 1F at 338). Her respiratory complaints such as dyspnea and wheezing (id.) are complicated by environmental factors like weather changes (Exhibit 3F at 82), at least in part, but also by the claimant's continued smoking against medical advice during much of the relevant period (Exhibits 1F at 371 / 5F at 8). In any event, a pulmonary function study that was done in October 2014 showed an FVC reading of 95% and an FEV1 reading of 92% indicative of normal findings (Exhibit 1F at 340). The claimant's asthma remained reasonably controlled (Exhibit 3F at 118) with inhaled bronchodilators reportedly used only 1-2 times a month in February 2019 (Exhibit 2F at 12) and 4-5 times a year in April 2019 (Exhibit 3F at 82). A chest x-ray in February 2021 showed no acute disease (Exhibit 3F at 159, 164), and flares of symptoms were treated conservatively on an outpatient basis typically consisting of a dose of steroids (Exhibit 3F at 164). Again, smoking cessation also has been repeatedly advised (e.g., Exhibits 1F at 173, 232, 365, 371 / 2F at 16, 21 / 3F at 73) particularly since tobacco use also potentially exacerbated the claimant's hypertension and hyperlipidemia treated by medications (Exhibits 1F / 2F / 3F).

(ECF No. 7, PageID #: 50–1, Tr. at 23–24).

4

### C. Opinion Evidence at Issue

#### 1. Dr. Monica Seo, September 2023

In September 2023, Dr. Monica Seo, Whalen's treating physician, completed an assessment opining that Whalen: could sit for thirty minutes at one time before needing to get up; could stand for three to five minutes at one time before needing to sit down, walk around, etc.; could sit for less than two hours in an eight-hour work day; could stand/walk for less than two hours in an eight-hour work day; would need to walk around for three minutes every thirty minutes; would need to take unscheduled five-to-ten-minute breaks at least one to two times an hour because of muscle weakness and pain/parethesias, numbness; would need to elevate her legs to stool height 100% of the time while sitting due to swelling in her feet, ankles, calves and knees; would always need to use a cane or walker for imbalance, pain, and weakness for walking, standing, or both; would rarely be able to lift less than ten pounds and never lift more than ten pounds; would have significant limitations with reaching, handling, or fingering, including grasping, turning, and twisting objects 5% of the time, finely manipulate 5% of the time, reach in front of her body 5% of the time, and never reach overhead; would be off task 25% or more of the time; would be incapable for even "low stress" work due, in part, to her severe depression and anxiety and pain symptoms; and would be absent more than four days per month due to her impairments. (*Id*., PageID #: 1584–7, Ex. 10F).

The ALJ found Dr. Seo's opinion unpersuasive.

#### 2. State agency reviewing physicians' opinions

State agency reviewing physician Leon Hughes, M.D., reviewed the claimant's medical records and gave an opinion based on those records on October 14, 2022. (ECF No. 7, Ex. 2A). Dr. Hughes opined that Whalen has the following "severe" physical impairments: skeletal spine

disorders, hyperlipidemia, essential hypertension, asthma, osteoarthrosis, and arthropathies. Dr. Hughes stated that Whalen:  could occasionally lift up to 20 pounds and frequently lift up to 10 pounds; could stand/walk up four hours of an eight hour work day and sit for up to six hours of an eight hour work day; could occasionally push/pull with arms due to weakness and degenerative changes; could occasionally push/pull with legs due to degenerative changes of her hips and knees; could stand/walk for up to fifteen minutes at a time; could frequently balance; occasionally climb stairs or ramps, crouch, and stoop; and never crawl or climb ladders/scaffolds/ropes; could occasionally reach in all directions with her right arm; and would need to avoid even moderate exposure to hazards.

On reconsideration on March 6, 2023, Rannie Amiri, M.D. adjusted Dr. Hughes's opinion by opining that Whalen could push/pull without limitation (within the specified lifting confines); occasionally balance and kneel; and would need to avoid all exposure to unprotected heights and operating heavy/hazardous machinery. (*Id*., Ex. 3A). Dr. Amiri also did not include a restriction to stand/walk for up to fifteen minutes at a time.

The ALJ found both opinions persuasive, but, where the opinions differed, the ALJ incorporated into the RFC only the less restrictive limitations opined by Dr. Amiri.

## IV.    The ALJ's Decision

The ALJ made the following findings relevant to this appeal:

> 2. The claimant did not engage in substantial gainful activity from the alleged onset date of December 31, 2015 through the date last insured of September 30, 2021 (20 CFR 404.1571 et seq.).

(ECF No. 7, PageID #: 46, Tr. at 19).

> 3. Through the date last insured, the claimant had the following severe impairments: skeletal spine disorders, osteoarthritis, unspecified arthropathies, hyperlipidemia, essential hypertension, asthma, and obesity (20 CFR 404.1520(c)).

6

(*Id*. at PageID #: 47, Tr. at 20).

     5. After careful consideration of the entire record, I find that, through the date last insured, the claimant had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) subject to the following limitations: (1) standing/walking for 4 hours; (2) occasionally climbing ramps and stairs, balancing, stooping, kneeling, and crouching; (3) never climbing ladders, ropes, or scaffolds, or crawling; (4) no exposure to workplace hazards such as unprotected heights or dangerous machinery.

(*Id*. at PageID #: 42, Tr. at 22).

     10. Through the date last insured, considering the claimant's age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that the claimant could have performed (20 CFR 404.1569 and 404.1569a).

(*Id*. at PageID #: 53, Tr. at 26).

     11. The claimant was not under a disability, as defined in the Social Security Act, at any time from December 31, 2015, the alleged onset date, through September 30, 2021, the date last insured (20 CFR 404.1520(g)).

(*Id*. at PageID #: 54, Tr. at 27).

## V. Law & Analysis

### A. Standard of Review

The Court's review "is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made pursuant to proper legal standards." *Winn v. Comm'r of Soc. Sec.*, 615 F. App'x 315, 320 (6th Cir. 2015)(citation omitted); *see also* 42 U.S.C. § 405(g). "[S]ubstantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (quoting *Cutlip v. Sec'y of HHS*, 25 F.3d 284, 286 (6th Cir. 1994)).

"After the Appeals Council reviews the ALJ's decision, the determination of the council becomes the final decision of the Secretary and is subject to review by this Court." *Olive v. Comm'r*

*of Soc. Sec.*, No. 3:06 CV 1597, 2007 WL 5403416, at *2 (N.D. Ohio Sept. 19, 2007) (citing *Abbott v. Sullivan*, 905 F.2d 918, 922 (6th Cir. 1990); *Mullen v. Bowen*, 800 F.2d 535, 538 (6th Cir. 1986) (en banc)). If the Commissioner's decision is supported by substantial evidence, it must be affirmed, "even if a reviewing court would decide the matter differently." *Id.* (citing 42 U.S.C. § 405(g); *Kinsella v. Schweiker*, 708 F.2d 1058, 1059–60 (6th Cir. 1983)).

### B. Standard for Disability

The Social Security regulations outline a five-step process that the ALJ must use in determining whether a claimant is entitled to supplemental-security income or disability-insurance benefits: (1) whether the claimant is engaged in substantial gainful activity; (2) if not, whether the claimant has a severe impairment or combination of impairments; (3) if so, whether that impairment, or combination of impairments, meets or equals any of the listings in 20 C.F.R. § 404, Subpart P, Appendix 1; (4) if not, whether the claimant can perform her past relevant work in light of her residual functional capacity ("RFC"); and (5) if not, whether, based on the claimant's age, education, and work experience, she can perform other work found in the national economy. 20 C.F.R. § 404.1520(a)(4)(i)–(v); *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 642–43 (6th Cir. 2006). The claimant bears the ultimate burden of producing sufficient evidence to prove that she is disabled and, thus, entitled to benefits. 20 C.F.R. § 404.1512(a). The claimant has the burden of proof in steps one through four. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997). The burden shifts to the Commissioner at step five to establish whether the claimant has the residual functional capacity to perform available work in the national economy. *Id.*

### C. Discussion

Whalen raises two issues on appeal: 1. Whether the ALJ erred by failing to support and/or address consistency with her conclusions regarding the opinions of the treating and reviewing

8

sources; and 2. whether the ALJ erred at Step Five of the sequential evaluation by concluding that Whalen could perform work at the light level of exertion. In her first issue, Whalen challenges the ALJ's analysis of the opinion of her treating physician, Dr. Monica Seo, as well as the ALJ's failure to include an opined limitation from a State agency physician's opinion despite having found that opinion "persuasive".

The Court agrees with Whalen that the ALJ failed to adequately address the supportability and consistency of Dr. Seo's opinion as required under 20 C.F.R. § 404. 1520c(b)(2). Because the ALJ failed to comply with agency regulation, remand is necessary.

### 1.  Analysis of medical opinions

At Step Four, the ALJ must determine a claimant's RFC by considering all relevant medical and other evidence. 20 C.F.R. §§ 404.1520(e). For claims filed after March 27, 2017, such as this one, the Social Security Administration "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s)." C.F.R. § 404.1520c(a). Nevertheless, an ALJ must "articulate how [she] considered the medical opinions and prior administrative medical findings" in adjudicating a claim. 20 C.F.R. § 404.1520c(a). Medical source opinions are evaluated using the factors listed in 20 C.F.R. § 404.1520c(c). The factors include: supportability; consistency; the source's relationship with the claimant; the source's specialized area of practice, if any; and "other factors that tend to support or contradict a medical opinion." 20 C.F.R. §§ 404.1520c(c). The ALJ is required to explain how she considered the supportability and consistency of a source's medical opinion(s), but generally is not required to discuss other factors. 20 C.F.R. § 404. 1520c(b)(2) ("The factors of supportability [ ] and consistency [ ] are the most important factors we consider when we determine how persuasive we find a medical source's medical opinions ....").

### 2. Discussion

On September 1, 2023, Whalen's primary care physician, Dr. Monica Seo, completed a "Physical Medical Source Statement". (ECF No. 7, PageID #: 1584–87, Ex. 10F). Dr. Seo had treated Whalen since 2015 and stated that Whalen had arthritis in her hips, knees, shoulders, and back, and symptomatic varicose veins. Dr. Seo explained that Whalen's symptoms included: severe back pain that increased in severity while standing, sitting, and walking; severe shoulder pain that increased in severity when lifting or moving her arms; severe pain, numbness, weakness, and swelling in both knees; severe pain in her legs from varicose veins that causes swelling requiring her to elevate her legs while sitting; fatigue; weakness; anxiety; and depression. (*Id*.). Dr. Seo identified the following objective signs and clinical findings: Whalen is "unable to lift arms above head, unable to take more than 10 steps, unable to stand for long periods of time, limited range of motion (severe)  [in] upper and lower extremities, with pain." (*Id*.). Following this Dr. Seo opined that because of her symptoms, Whalen:

- could sit for thirty minutes at one time before needing to get up;
- could stand for three to five minutes at one time before needing to sit down, walk around, etc.;
- could sit for less than two hours in an eight-hour work day;
- could stand/walk for less than two hours in an eight-hour work day;
- would need to walk around for three minutes every thirty minutes;
- would need to take unscheduled five-to-ten-minute breaks at least one to two times an hour because of muscle weakness and pain/parethesias, numbness;
- would need to elevate her legs to stool height 100% of the time while sitting due to swelling in her feet, ankles, calves and knees;
- would always need to use a cane or walker for imbalance, pain, and weakness for walking, standing, or both;
- would rarely be able to lift less than ten pounds and never lift more than ten pounds;
- would have significant limitations with reaching, handling, and fingering, including being able to grasp, turn, twist objects 5% of the time, finely manipulate 5% of the time, reach in front of her body 5% of the time, and never reach overhead;
- would be off task 25% or more of the time;
- would be incapable for even "low stress" work due, in part, to her severe depression and anxiety and pain symptoms; and
- would be absent more than four days per month due to her impairments.

(*Id*.).

> The ALJ found Dr. Seo's opinion unpersuasive and explained:
>
> It is clear from the medical records that Dr. Seo has a long treatment history with the claimant and most consistently since 2015 (see, Exhibit 1F), and it is also apparent the claimant's multi-joint pain undoubtedly limited her exertional capabilities at times. Yet, Dr. Seo's assessment suggesting the claimant was precluded from any and all work activity is disproportionate to the previously discussed examination findings and the level of conservative treatment the claimant received during the period at issue. Therefore, reasonable restrictions in exertional capabilities (i.e., restricting the claimant to a reduced range of "light" exertion) and nonexertional capabilities (e.g., postural limitations and safety precautions) have been included in the residual functional capacity assessment found to be applicable herein.  The claimant has not presented objective medical evidence or clinical findings to establish a medically determinable physical or mental impairment that would result in any greater degree of limitation. The evidence of record generally does not support the alleged loss of functioning, and allegations of disability are not persuasive.

(*Id*., PageID #: 52, Tr. at 25).

The only regulatory factors for which the ALJ was required to give an explanation were supportability and consistency. *See* 20 C.F.R. § 404.1520c(b)(2). The ALJ must make the reasons for the supportability and consistency analysis sufficiently clear for subsequent review to determine whether substantial evidence supports the claimant's disability determination. *Hill v. Comm'r of Soc. Sec.*, 560 F. App'x 547, 551 (6th Cir. 2014). "So long as the ALJ's decision adequately explains and justifies its determination as a whole, it satisfies the necessary requirements to survive this court's review." *Norris v. Comm'r of Soc. Sec.*, 461 F. App'x 433, 440 (6th Cir. 2012). The ALJ must "explain how [she] considered the supportability and consistency factors for a medical source's medical opinions." 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2). "The administrative adjudicator has the obligation in the first instance to show his or her work, i.e., to explain in detail how the factors actually were applied in each case, to each medical source." *Hardy v. Comm'r of Soc. Sec.*, 554 F. Supp. 3d 900, 909 (E.D. Mich. 2021).

11

"Resorting to boilerplate language to support a finding of unpersuasiveness does not satisfy that obligation." *Id.* Summarization of the medical record including both supportive and contradictory information is not, itself, sufficient to explain the ALJ's reasoning or to "provide sufficient rationale for a reviewing adjudicator or court." *Id.* (quoting *Warren I. v. Comm'r of Soc. Sec.*, No. 5:20-CV-495 (ATB), 2021 WL 860506, *8 (N.D.N.Y. Mar. 8, 2021).

Whalen argues the ALJ "failed to sufficiently address the supportability and consistency" of Dr. Seo's opinion and thus the ALJ's conclusion is not supported by substantial evidence. (ECF No. 8 at 11). The Commissioner argues that the ALJ's conclusion is supported by substantial evidence; the ALJ is not required to meticulously recite every piece of evidence; and the path of the ALJ's reasoning can be readily traced.

This Court agrees with Whalen that the ALJ's decision failed to adequately discuss the supportability and consistency of Dr. Seo's opinion.

### a. The Supportability Factor

#### i. ALJ did not discuss the supportability of Dr. Seo's opinion.

The supportability factor requires an ALJ to evaluate the relevance of "objective medical evidence and supporting explanations presented by a medical source ... to support his or her medical opinion(s) ...." 20 C.F.R. §§ 1520c(c)(1).

Absent from the ALJ's evaluation of Dr. Seo's opinion is any specific discussion on the supportability of Dr. Seo's opinion. 20 C.F.R. § 404.1520c(b)(2). After noting that Dr. Seo had treated Whalen since 2015, the ALJ noted that it was "apparent [that] the claimant's multi-joint pain undoubtedly limited her exertional capabilities at times." (ECF No. 7, PageID #: 52, Tr. at 25). Despite recognizing both the longevity of Dr. Seo's treatment of Whalen and that Whalen's impairment "undoubtedly" caused her exertional limitations, the ALJ summarily concluded that

12

"Dr. Seo's assessment suggesting the claimant was precluded from any and all work activity is disproportionate to the previously discussed examination findings and the level of conservative treatment the claimant received during the period at issue" and that "[t]he evidence of record generally does not support the alleged loss of functioning". (*Id.*).

The ALJ's general statements do not contain the level of specificity desired by the regulations. The ALJ failed to note any of Dr. Seo's opined restrictions except for the opinion that Whalen was incapable of even low stress work due in part to her depression and pain levels. The ALJ did not mention Dr. Seo's opinions that Whalen could sit for thirty minutes at one time before needing to get up; could stand for three to five minutes at one time before needing to sit down, walk around, etc.; could sit for less than two hours in an eight-hour work day; could stand/walk for less than two hours in an eight-hour work day; would need to walk around for three minutes every thirty minutes; would need to take unscheduled five-to-ten-minute breaks at least one to two times an hour because of muscle weakness and pain/parethesias, numbness; would need to elevate her legs to stool height 100% of the time while sitting due to swelling in her feet, ankles, calves and knees; would always need to use a cane or walker for imbalance, pain, and weakness for walking, standing, or both; would rarely be able to lift less than ten pounds and never lift more than ten pounds; would have significant limitations with reaching, handling, or fingering, including being able to grasp, turn, twist objects 5% of the time, finely manipulate 5% of the time, reach in front of her body 5% of the time, and never reach overhead; would be off task 25% or more of the time; and would be absent more than four days per month due to her impairments. At least some of the opined limitations would have been work preclusive had the ALJ adopted Dr. Seo's opinion. (*See, e.g.*, ECF No. 7, PageID #: 91, Tr. at 64 (vocational expert opined that a limitation to occasional reaching in all directions on the right-hand side would be work preclusive), Tr. at 66

(off-task percentage of 25% or more would be work preclusive),  ECF No. 8 at 16—17 (based on the relevant Grid Rule, a limitation for standing/walking less than 2 hours per workday provided for a finding of disabled) (citing Appendix 2 to Subpart P of Part 404, Rule 201.14). The ALJ failed to explain why she found that Dr. Seo's opinions were purportedly not supported by relevant objective medical evidence and Dr. Seo's supporting explanations. *See William G. v. Comm'r of Soc. Sec.*, No. 2:22-cv-213, 2022 WL 4151381, at *8 (S.D. Ohio Sept. 13, 2022), *report and recommendation adopted*, 2022 WL 16745337 (S.D. Ohio Nov. 7, 2022) ("While the ALJ may ultimately find Dr. Babson's opinion unsupported, he must explain his reasoning.") (citing 20 C.F.R. § 404.1520c(b)(2)).

Even if this Court interpreted the ALJ's general statements that the "previously discussed examination findings" and "[t]he evidence of record generally does not support the alleged loss of functioning" (ECF No. 7, PageID #: 52, Tr. at 25) included reference to Dr. Seo's records, the Court cannot trace the path of the ALJ's reasoning in her decision that Dr. Seo's records did not support her opinions.

Prior to addressing Dr. Seo's opinion, the ALJ addressed the opinions of the State agency reviewing physicians who opined on some of the same functional limitations as Dr. Seo. For example, Dr. Seo opined that Whalen could stand/walk for less than two hours in an eight-hour work day and could stand/walk for three to five minutes at a time; State agency reviewing consultant Dr. Hughes opined that Whalen could stand/walk for up to four hours in an eight-hour work day and could stand/walk for fifteen minutes at a time; and State agency reviewing consultant Dr. Amiri opined that Whalen could stand/walk for up to four hours in an eight-hour work day but did not further limit the duration Whalen could stand/walk at a time. The ALJ found the State agency physicians' opinions persuasive and stated that "objective examinations show grossly

14

normal findings with respect to gait and coordination (Exhibits 1F at 177 / 3F at 7 / 4F at 64). Any edema the claimant experienced was described as 'trace' (Exhibit 3F at 74, 150). Muscle strength was normal at 5/5 (Exhibits 1F at 177, 184 / 2F at 16). Musculoskeletal range of motion was good throughout the neck, spine, and extremities, [. . .] (Exhibit 1F at 140, 177)". (ECF No. 7, PageID #: 51). The ALJ concluded that Whalen's "bouts of leg pain [are] more consistent with spinal stenosis and the absence of patellar reflexes (Exhibits 1F at 184 / 2F at 16 / 3F at 73) and positive straight leg raise due to lower lumbar pain (Exhibit 1F at 214)" (*Id*. at PageID #: 52). In this analysis, the ALJ cites a single encounter with Dr. Seo on February 26, 2019 (Ex. 1F at 184; 2F at 16) in support of her finding that Whalen had "normal" muscle strength and that her leg pain was consistent with spinal stenosis and the absence of patellar reflexes.[1] Whether Whalen's leg pain was caused by spinal stenosis and the absence of patellar reflexes or something else does not explain why the ALJ found that the limitations opined by Dr. Seo were not supported by her records. A diagnosis alone does not address the severity of symptoms or limitations experienced by a claimant. *See Fackler v. Saul*, No. 3:20-CV-00790, 2021 WL 3493511, at *11 (N.D. Ohio July 16, 2021), *report and recommendation adopted sub nom. Fackler v. Comm'r of Soc. Sec.*, No. 3:20-CV-790, 2021 WL 3492129 (N.D. Ohio Aug. 9, 2021) ("it is well established that a diagnosis alone does not indicate the functional limitations caused by an impairment."). And a review of Dr.

---

[1] The remainder of the records cited by the ALJ were not records from encounters at Dr. Seo's practice. (*See* Ex. 1F at 140 (2/28/2021 record from Avon Hospital where Whalen presented to the emergency department with complaints of shortness of breath), 177 (3/13/2019 Progress note from CCF Cleveland Clinic Main consult with rheumatology for joint pain in shoulder, hip, and knee), 214 (8/31/2016 Progress note from CCF Cleveland Clinic Main for follow up regarding chronic low back pain); 3F at 7 (8/31/2016 Progress note from CCF Cleveland Clinic Main for follow up regarding chronic low back pain), 73-74 (3/14/2019 Visit Notes from CCF Cleveland Clinic Main office visit in vascular medicine), 150 (4/30/2019 Visit Notes from CCF Cleveland Clinic Main office visit in vascular medicine); 4F at 64 (4/29/2019 surgical consult at Avon Hospital, cleared for right total shoulder arthroplasty)).

15

Seo's record cited by the ALJ does nothing to enlighten the Court as to the ALJ's reasoning for determining that Dr. Seo's opinions were not supported. Although the progress notes from the February 26, 2019 encounter with Dr. Seo's clinic indicate normal muscle strength in the neurologic findings and the absence of patellar reflexes, the notes also indicate symptoms of swelling in Whalen's lower legs, discoloration in Whalen's feet including toes turning "black", aching and burning in her feet, increased pain from walking, "ton of joint pain", pain levels 10/10, numbness or tingling of feet, feet constantly freezing, and pain uncontrolled by over the counter pain medicine. (Ex. 1F at 181, 183). The notes indicate "bilateral lower leg edema, venous stasis discoloration and faintly palpable pedal pulse", no patellar reflexes, and weak pulses in pedal area. (Ex. 1F at 184). Whalen was referred to vascular medicine for a consult regarding the discoloration in her feet and it was noted that she had a rheumatology appointment scheduled to address her chronic pain. (*Id.*). Yet the ALJ does not address the remainder of the findings from February 26, 2019 encounter. Nor is there any indication that the State agency reviewing consultants reviewed the February 26, 2019 medical record. (*See id.* at PageID #: 101, Tr. at 74, Ex. 2A at 2; PageID #: 110-11, Tr. at 83-84, Ex. 3A at 2-3; Ex. 2A at 6; 3A at 6 (Neither the February 26, 2019, encounter at Dr. Seo's clinic, nor the March 14, 2019, encounter with vascular medicine were listed in the agency's Findings of Fact and Analysis of Evidence or in the State agency reviewing physicians' explanations)). Accordingly, the ALJ's analysis of the State agency reviewing physicians' opinions does not explain the ALJ's decision that Dr. Seo's opined stand/walk limitations were not supported by her records.

Indeed, Dr. Seo's opined restrictive lower extremity limitations were supported in her records. Dr. Seo's opinions were supported objectively by 2019 x-rays demonstrating bilaterally advanced degenerative arthritis of the hip joints along with moderately advanced bilateral lateral

compartment degenerative arthritis of the knee joints. (ECF No. 7, PageID #: 469, Ex. 1F at 167 (Ex. 1F at 163–69 is the progress note from an encounter at Dr. Seo's clinic during which they discussed with her the results of imaging studies); radiological readings at Ex. 1F at 480–82, Ex. 3F at 64–71). Progress notes from Whalen's July 13, 2021, encounter with Dr. Seo included a notation that Whalen was last seen in the office in February 2019 and that Whalen had moved back to Ohio after living out of state. (*Id*. at PageID #: 438, Ex. 1F at 136). Whalen reported to Dr. Seo that she had been off all medications for 18 months as a result of having no insurance and that she was overall not feeling well.[2] During the July 2021 encounter Dr. Seo noted "[w]orsened/progressive arthritis in joints, [with] worsened pain and limiting her activity". (*Id*). As a result of that encounter, Dr. Seo restarted treatment of Whalen's arthritic pain with pain medication and referred her to surgical review and rheumatology. X-rays taken on August 25, 2021, upon referral from Dr. Seo for a surgical consult, showed "severe degenerative arthritis of both hips, bone-on-bone." (*Id*., PageID #: 434, Ex. 1F at 132). Whalen had her right hip replaced on May 10, 2022, and her left hip replaced on September 6, 2022; both replacements were due to

---

[2] It is unclear, because the ALJ did not discuss it, whether the ALJ considered the break in treatment from 2019 to 2021 as an asymptomatic period or failure to treat due to lack of insurance (or any other reason).

her osteoarthritis (Tr. 1378-1380, 1375-1376).[3] Although Dr. Seo did not perform the surgeries, she was fully aware of Whalen's surgical intervention. (*See id.*, PageID #: 1423, Ex. 6F at 14 (September 26, 2022, progress note from Dr. Seo noting that Whalen had "underwent hip replacement surgery several weeks ago.")). In a progress note from June 9, 2022, Dr. Seo notes that Whalen reports "severe pain in both legs knees/down when she stands or walks [more than] 5 minutes." (ECF No. 7, Ex. 1F at 110—11).

The ALJ did not address the x-rays, CT scans, or post-DLI surgical intervention, nor the majority of Dr. Seo's records in her analysis of Dr. Seo's opinion nor in the analysis of the opinions of the State agency reviewing physicians. (*Id.*, Tr. at 24—25). Based on a review of the ALJ's analysis of the State agency reviewing physicians' opinions, it is unclear how Dr. Seo's records undermine her opinions regarding the severity of Whalen's lower extremity restrictions.

---

[3] The relevant period of disability concluded on September 30, 2021. (ECF No. 7, PageID #: 46).  Although the surgeries occurred after Whalen's period of disability, the ALJ may consider them as evidence of the extent of Whalen's functional limitations if the surgeries related back to impairments that existed during the period of disability. *Darrell G. v. Comm'r of Soc. Sec.*, No. 3:24-CV-025, 2025 WL 87929, at *8 (S.D. Ohio Jan. 14, 2025), *report and recommendation adopted*, No. 3:24-CV-025, 2025 WL 510068 (S.D. Ohio Feb. 14, 2025) ("Where the evidence shows that the claimant's impairment had grown progressively worse over time, dismissing evidence because it was generated after the date last insured may be improper.") (citing *Blankenship v. Bowen*, 874 F.2d 1116, 1122 (6th Cir. 1989)) (by requiring impairments to reach Listing level severity before finding the plaintiff became disabled post-date last insured, the ALJ ignored the slowly progressive nature of the plaintiff's schizophreniform disorder, ignored the severity of that impairment, failed to account for the consultative examining physician's statements about the plaintiff's sullenness and hostility, and gave the appearance the ALJ selected the onset date solely because it fell outside the insured status period). On the other hand, the ALJ does not err by rejecting evidence created "well after the date last insured [that] likely described a deterioration" in the plaintiff's condition and not the plaintiff's condition during the time period at issue. *Johnson v. Comm'r. of Soc. Sec.*, 535 F. App'x 498, 506 (6th Cir. 2013) (ALJ's finding that a questionnaire "created well after the date last insured ... likely described a deterioration" in the plaintiff's condition rather than the plaintiff's condition during the time period in question was an acceptable reason to give the non-treating physician's opinion greater weight); *Siterlet*, 823 F.2d at 920 (treating physician's report was "minimally probative" of plaintiff's condition prior to date last insured where the claimant suffered from one or more degenerative disorders and the treating physician first saw the plaintiff after his insured status had expired).

The remainder of the decision fails to explain the ALJ's conclusion that Dr. Seo's opinions regarding Whalen's lower extremity limitations were not supported by her records. The ALJ noted that Whalen's treatment during the period at issue had been "entirely conservative" for her joint pain. (ECF No. 7, PageID #: 50, Tr. at 23). That said, in the ALJ's summary of Whalen's medical records, the ALJ noted that 2019 x-rays showed "extensive arthritic changes throughout the joints of both hips and both shoulders in addition to moderately advanced degenerative arthritis of the knees", that CT scans "confirmed significant bone-on-bone osteoarthritis of the right shoulder with a partial rotator cuff tear," that surgical intervention was offered for Whalen's right shoulder, that Whalen underwent bilateral hip replacements in May and September 2022, and that Whalen was scheduled for a right total knee arthroplasty. (*Id*. at PageID #: 50, Tr. at 23). Although the ALJ acknowledged the objective evidence regarding Whalen's joint pain and surgical interventions (*see id*.), it remains unclear to this Court why the ALJ arrived at the conclusion that Dr. Seo's records did not support her opinions. The ALJ's summary of the Whalen's records "does little to explain the ALJ's reasoning or to 'provide sufficient rationale for a reviewing adjudicator or court.' " *Hardy*, 554 F. Supp. 3d at 907 (quoting *Warren I.*, 2021 WL 860506, at *8); *see also Gross v. Kijakazi,* No. 1:21-CV-00022, 2022 WL 4102774, at *7 (M.D. Tenn. Aug. 19, 2022), *report and recommendation adopted,* No. 1:21-CV-00022, 2022 WL 4097708 (M.D. Tenn. Sept. 7, 2022).

The ALJ did not explain what in Dr. Seo's records undercut her opinions and offered no discussion of the supportability factor. " 'The [ALJ] has the obligation in the first instance to show his or her work, i.e., to explain in detail how the factors were actually applied in each case, to each medical source.' " *Heatherly v. Comm'r of Soc. Sec.*, No. 1:23-CV-02456-BMB, 2024 WL 4181711, at *11 (N.D. Ohio Sept. 12, 2024), *report and recommendation adopted,* No. 1:23-CV-02456, 2024 WL 4458259 (N.D. Ohio Oct. 10, 2024)(quoting *Hardy*, 554 F. Supp. 3d at 909).

"Resorting to boilerplate language to support a finding of unpersuasiveness does not satisfy that obligation." *Hardy*, 554 F. Supp. 3d at 909. The "importance of cogent explanations is perhaps even more important" . . . "[b]ecause of the greater latitude afforded ALJs under the new regulations[.]" *Id.* at 908. Although the ALJ appears to have summarized the record, the ALJ's summary includes supportive and contradictory information and fails to explain the factual basis for her conclusory statements that Whalen "has not presented objective medical evidence or clinical findings to establish" the limitations opined by Dr. Seo, nor that "[t]he evidence of record generally does not support the alleged loss of functioning." (ECF No. 7 at PageID #: 52). *See Heatherly*, 2024 WL 4181711, at *12.

The Commissioner does not point to instances in the determination where the ALJ included citations to Dr. Seo's own treatment records to undermine her opinions regarding the severity of Whalen's restrictions.[4] Instead, the Commissioner generally discusses why the ALJ's conclusion is supported by substantial evidence. (ECF No. 10 at 14-15). "There is, nonetheless, a distinction between an ALJ providing support for his RFC determination and an ALJ discussing whether a provider's opinion lacks support." *Amber N. M. v. Comm'r of Soc. Sec.*, No. 2:24-CV-3388, 2024 WL 5198685, at *7 (S.D. Ohio Dec. 23, 2024), *report and recommendation adopted sub nom. Amber M. v. Comm'r of Soc. Sec.*, No. 2:24-CV-3388, 2025 WL 252835 (S.D. Ohio Jan. 21, 2025).

The ALJ similarly failed to explain how Dr. Seo's restrictive upper extremity push/pull and reaching limitations were not supported by Dr. Seo's records. First, the ALJ did not address Dr. Seo's opined upper extremity restrictions in her analysis of Dr. Seo's opinion. (*See* ECF No.

---

[4] The only specific argument that the Commissioner makes is that Dr. Seo's opinion regarding Whalen's lower extremity limitations is not supported because "none of [Dr. Seo's] own treatment notes document lower extremity swelling." Not only is this incorrect (*see* ECF No. 7, PageID #: 483, Ex. 1F at 181), this argument addresses whether substantial evidence supports the conclusion, not whether the ALJ adequately articulated her finding.

7, PageID #: 52). Second, the ALJ's analysis of the State agency reviewing physicians' opinions did not explain how Dr. Seo's records do not support limitations. (*See id.*). There, the ALJ stated simply that Whalen "had had no shoulder examinations since 2019 (Exhibit 1F at 136) and cursory examinations toward the end of the date last insured provide no basis for further limitations (Exhibit 1F at 130, 136)." (*Id.*). Exhibit 1F at 136 refers to the July 13, 2021, encounter with Dr. Seo.[5] As stated above, at that encounter Whalen explained the lack of treatment from 2019 to the 2021 as a result of having no insurance, moving out of state, and running out of medications. Yet the ALJ does not explain how this evidence was considered. *See Eddington v. Comm'r of Soc. Sec.*, No. 1:24-CV-00564-JRA, 2024 WL 4869943, at *11 (N.D. Ohio Nov. 22, 2024), *report and recommendation adopted*, No. 1:24-CV-00564, 2025 WL 39858 (N.D. Ohio Jan. 7, 2025) (SSR 16-3p "requires an ALJ to consider possible reasons why a claimant failed to seek medical treatment consistent with the degree of his or her complaints 'before drawing an adverse inference from the claimant's lack of medical treatment.' " (quoting *Dooley v. Comm'r of Soc. Sec.*, 656 F. App'x 113, 119 (6th Cir. 2016)). Such factors include an inability to afford treatment and a lack of access to free or low-cost medical services. SSR 16-3P, 2017 WL 5180304, at *10 (Oct. 25, 2017). During that appointment Whalen reported that she was not feeling well overall. Although Dr. Seo noted that Whalen's hip pain was the worst symptom of her joint pain at that visit, Whalen complained of worsened/progressive arthritis in her joints overall. It is unclear how this record undercuts Dr. Seo's opinion. Third, the decision overall does not explain how Dr. Seo's records did not support upper extremity reaching limitations. The ALJ did not explain how she considered Whalen's objective medical support for the restrictive upper extremity limitations opined by Dr.

---

[5] Exhibit 1F at 130 refers to a 9/15/2021 record from CCF Lorain FHC record of encounter for colon cancer screening.

Seo, such as Dr. Seo noting Whalen's history of osteoarthritis in her right shoulder requiring surgical treatment (Ex. 1F at 136) or the February 26, 2019 encounter where the CNP noted that Whalen could not lift her arms "very high" and had "constant generalized joint pain that can be a 10/10." (*Id. a*t PageID 486, Ex.1F at 184). Nor did the ALJ address the objective evidence supporting the limitations such as the March 13, 2019 x-rays showing "Bilaterally advanced glenohumeral degenerative arthritis with progression of disease over 4 1/2 years [and] Moderate progression of left acromioclavicular degenerative arthritis". (Ex. 1F at 167). These x-ray results were discussed with Whalen on March 18, 2019 during an encounter at Dr. Seo's clinic (Ex. 1F at 163-169) and then followed by a March 19, 2019 CT scan, March 21, 2019 MRI, and April 29, 2019 pre-operative CT scan, each showing severe osteoarthritis of the right shoulder. Although the ALJ summarized the objective evidence in her decision, she failed to explain how these objective findings or Dr. Seo's records undercut Dr. Seo's opined limitations.

Finally, there were several limitations opined by Dr. Seo that were not addressed in the ALJ's decision — that Whalen would: be off-task more than 25% of the time; need to take unscheduled five-to-ten-minute breaks at least one to two times an hour; need to elevate her legs to stool height 100% of the time while sitting; always need to use a cane or walker for imbalance, pain, and weakness for walking, standing, or both; have significant limitations with handling or fingering, including being able to grasp, turn, twist objects 5% of the time, finely manipulate 5% of the time; and be absent more than four days per month due to her impairments. The Commissioner argues that "most of the assessed limitations were unaccompanied by any explanation identifying supportive medical signs or laboratory findings." (ECF No. 10 at 14). However, Dr. Seo supported the remaining opinions with her explanations regarding Whalen's pain, swelling, medication side effects, limited range of motion observations, and ineffective

conservative treatments. (*Id*., Ex. 10F).

The only specific argument that the Commissioner makes is that Dr. Seo's opinion is not supported because "none of [Dr. Seo's] own treatment notes document lower extremity swelling." (ECF No. 10 at 15). However, this is incorrect. In the February 26, 2019, progress notes from an encounter with the nurse practitioner at Dr. Seo's office, the CNP wrote, "Over the last couple of months the patient's lower legs became swollen and now she has discoloration in both feet. She has bright red splotches and now her 'toes turn black'. Her feet 'hurt, they are aching and burning'. She does have increased pain from walking but it does not wake her up from sleeping. Denies ulcerations". (ECF No. 7, PageID #: 483, Ex. 1F at 181). It was noted that Whalen had bilateral lower extremity edema, venous stasis discoloration, and faintly palpable pedal pulse (*Id*., PageID #: 482—86, Ex. 1F at 180—6). As a result of that encounter, Whalen was referred to vascular medicine for a consult (*id*.) and the record of that visit was shared with Dr. Seo. (*See* ECF No. 7, PageID #: 471—75, Ex. 1F at 169—73; PageID #: 1089—92, Ex. 3F at 177—80). The ALJ stated that "[a]ny edema the claimant experienced was described as 'trace'" (*id*. (citing Ex. 3F at 74, 150)), but failed to acknowledge Dr. Seo's February 26, 2019 record noting "bilateral lower extremity edema" and referring Whalen to vascular medicine. An ALJs "factual findings as a whole" must show that she "implicitly resolved the conflicts in the evidence." *Smith-Johnson v. Comm'r of Soc. Sec.*, 579 F. App'x 426, 437 n.11 (6th Cir. 2014). An ALJ's "apparent failure to consider evidence that contradicts his conclusions signifies an impermissibly selective review of the record." *Kati M. v. Comm'r of Soc. Sec. Admin.*, No. 2:23-CV-04128, 2025 WL 444046, at *11 (S.D. Ohio Feb. 10, 2025) (citing *Gentry v. Comm'r of Soc. Sec.*, 741 F.3d 708, 723 (6th Cir. 2014) (reversing where the ALJ "cherry-picked select portions of the record"); *Germany-Johnson v.*

*Comm'r of Soc. Sec.*, 313 F. App'x 771, 777 (6th Cir. 2008) (finding error where the ALJ was "selective in parsing the various medical reports")).

Moreover, the ALJ did not discuss any of the other restrictions and failed to explain how Dr. Seo's records do not support the restrictions. For example, the ALJ never mentioned Dr. Seo's finding that Whalen would be off-task more than 25% of the time. This was not harmless given the vocational expert's testimony that an individual could not be off-task 25% of the time and still sustain employment. *See Fleischer v. Astrue*, 774 F. Supp. 2d 875, 881 (N.D. Ohio 2011) (the ALJ "may not ignore evidence that does not support his decision"); SSR 96-8p, 1996 WL 374184, at *7 (July 2, 1996) ("If the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted."); *Russ v. Comm'r of Soc. Sec.*, No. 1:20-CV-1838, 2021 WL 3709916, at *10 (N.D. Ohio Aug. 20, 2021) (remanding where the ALJ failed to address a limitation that would have been work preclusive).

This Court recognizes that an ALJ is not required to discuss every piece of evidence. *Weekly v. Comm'r of Soc. Sec. Admin.*, No. 1:13-CV-2108, 2015 WL 45529, at *8 (N.D. Ohio Jan. 2, 2015) (citing *Thacker v. Comm'r of Soc. Sec.,* 99 F. App'x 661, 665 (6th Cir. 2004)). That said, the ALJ must explain her conclusions enough for a reviewing court to trace the path of her reasoning. *Russell v. Comm'r of Soc. Sec. Admin.*, No. 1:23-CV-01748-DAC, 2024 WL 3638702, at *19 (N.D. Ohio Aug. 2, 2024) (citing *Correa v. Comm'r of Soc. Sec.*, No. 1:23-cv-685, 2023 WL 9064960, at *10, (N.D. Ohio Dec. 14, 2023) (citations omitted), *report and recommendation adopted*, 2024 WL 37877 (N.D. Ohio Jan. 3, 2024)). Moreover, "if the opinion of a medical source contradicts the RFC finding, an ALJ must explain why he did not include its limitations in the determination of the RFC." *Weekly*, 2015 WL 45529, at *8 (citing *Fleischer*, 774 F. Supp. 2d at 881 ("In rendering his RFC decision, the ALJ must give some indication of the evidence upon

24

which he is relying and he may not ignore evidence that does not support his decision, especially when that evidence, if accepted, would change his analysis.")). Because the ALJ did not sufficiently explain her conclusion that Dr. Seo's opinions were not supported by her records and findings, the ALJ did not properly evaluate Dr. Seo's opinion and the decision is not supported by substantial evidence. *See Hardy*, 554 F. Supp. 3d at 909 (explaining that the ALJ must "show his or her work, i.e., to explain in detail how the factors actually were applied in each case, to each medical source"). This Court cannot independently supply such an explanation. *See id.* ("It is not the role of a reviewing court to comb the record and imagine manifold ways in which the factors could have been applied to the evidence that was presented."). *Heatherly*, 2024 WL 4181711, at *12.

Remand is necessary to allow appropriate consideration of the evidence and a proper application of the regulations and to reassess the RFC.

### ii. The ALJ's failure to comply with revised § 404.1520c(b)(2) is not harmless error.

The Commissioner appears to acknowledge the ALJ's omission of explaining how Dr. Seo's opinion was not supported and argues that the opinion was mostly "the type of checkbox opinion that the Sixth Circuit has repeatedly found to be weak and poorly supported evidence." (ECF No. 10 at 14). The Commissioner, thus, suggests that the ALJ's omission was harmless error.[6]

---

[6] The Commissioner also argues that the ALJ's decision is supported by substantial evidence. As discussed above, where an ALJ fails to comply with the articulation requirement, the matter must, generally, be remanded even if substantial evidence supports the conclusion. *Heatherly*, 2024 WL 4181711, at *10 (citing *Wilson*, 378 F.3d at 546-47).

"The Sixth Circuit has not yet addressed if or when an ALJ's failure to properly analyze a medical opinion for supportability and consistency under the revised § 404.1520c(b)(2) can be excused as harmless error." *Miller v. Comm'r of Soc. Sec.*, No. 1:24-CV-00378, 2025 WL 957566, at *6 (N.D. Ohio Mar. 31, 2025). Courts in this district, however, have applied the harmless error standard when evaluating an ALJ's treatment of an expert medical opinion for applications after the revision. *Musolff v. Comm'r of Soc. Sec.*, No. 1:21-cv-1739, 2022 WL 1571864, at *13 (N.D. Ohio Apr. 27, 2022), *report and recommendation adopted*, No. 1:21-CV-1739, 2022 WL 1568478 (N.D. Ohio May 17, 2022) (citations omitted); *see also Riggio v. Comm'r of Soc. Sec.*, No. 3:22 CV 997, 2023 WL 622093, at *4 (N.D. Ohio Sept. 26, 2024). "The Sixth Circuit has defined an error to be harmless when it neither deprives a party of a substantial procedural right nor prejudices the party on the merits of the matter." *Drescher v. Comm'r of Soc. Sec.*, 656 F. Supp. 3d 765, 771 (N.D. Ohio Feb. 16, 2023) (citation omitted). "[T]he failure to strictly comply with these legal procedures may be harmless when: (1) the opinion is so patently deficient that it could not be credited; (2) the opinion was actually adopted; or (3) the ALJ met the goal of these procedural safeguards, despite failing to strictly comply with the regulations." *Musolff*, 2022 WL 1571864, at *13 (citing *Friend v. Comm'r of Soc. Sec.*, 375 F. App'x 543, 551 (6th Cir. 2010) (citing *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 547 (6th Cir. 2004))). None of those circumstances apply here.

First, this Court disagrees with the Commissioner's characterization of Dr. Seo's opinion as a "checkbox opinion". The Sixth Circuit has "characterized an opinion expressed in a checkbox form, without any further explanation to support the treating physician's conclusions, as 'weak evidence' and ha[s] concluded that such an opinion meets the patently deficient standard." *Pruitt v. Comm'r of Soc. Sec.*, No. 22-5152, 2022 WL 4517094, at *4 (6th Cir. Sept. 28, 2022) (citing

26

*Hernandez v. Comm'r of Soc. Sec.*, 644 F. App'x 468, 474-75 (6th Cir. 2016)). That is not the case here. Dr. Seo's opinion included several explanatory observations, as acknowledged by the Commissioner. Dr. Seo supported her opinions by citing to Whalen's symptoms of severe pain in her back, shoulders, hips, knees, legs; her varicose veins, swelling in her lower extremities, fatigue, inability to lift or move her arms above her head, inability to walk more than ten steps or stand for long periods of time, and her limited range of motion in her arms and lower extremities. (ECF No. 7, PageID #: 1584, Ex. 10F). Additionally, Dr. Seo noted Whalen's unsuccessful conservative treatments including physical therapy, hip/back/knee injections, and side effects related to her medications including drowsiness, dizziness, trouble thinking, and unsteadiness. (*Id.*).

The opinion was also accompanied by Whalen's medical records provided by Dr. Seo, which included progress notes, objective findings, and observations – including records showing that Whalen treated her impairments both conservatively with over-the-counter medications, epidurals, prescription medications, physical therapy, and, later, surgically. (*See* ECF No. 7, Exs. 1F, 2F). For example, Dr. Seo's restrictive limitations were supported by the x-rays demonstrating bilaterally advanced degenerative arthritis of the hip joints along with moderately advanced bilateral lateral compartment degenerative arthritis of the knee joints, and bilateral advanced glenohumeral degenerative arthritis with progress of disease along with moderate progress of left acromioclavicular degenerative arthritis. (ECF No. 7, PageID #: 469, Ex. 1F at 167 (Ex. 1F at 163–69 is the progress note from an encounter at Dr. Seo's clinic during which they discussed with her

the results of imaging studies); radiological readings at Ex. 1F at 480–82, Ex. 3F at 64–71).[7]

Accordingly, Dr. Seo's explanations were not so unmeaningful that they rendered her opinion

patently deficient such that the ALJ's failure to discuss the supportability factor was only harmless

error. *Compare, e.g.*, *Pettigrew v. Berryhill*, No. 1:17-CV-01118, 2018 WL 3104229, at *13 (N.D.

Ohio June 4, 2018) (finding that an ALJ did not reversibly err by failing to consider and discuss

an opinion found in a checkbox form that failed to refer to a diagnosis or explain how the plaintiff's

symptoms might cause opined limits), *report and recommendation adopted*, 2018 WL 3093696,

(N.D. Ohio June 22, 2018); *Lorraine S. v. Comm'r of Soc. Sec.*, No. 2:22-CV-2257, 2022 WL

17335383, at *7 (S.D. Ohio Nov. 30, 2022) (finding an ALJ did not err by finding that a medical

opinion was not fully supported where the opinion was in a checklist form with no explanation or

citations to the plaintiff's medical records), *report and recommendation adopted*, 2023 WL

5349521 (S.D. Ohio Aug. 21, 2023).

Second, the ALJ did not include Dr. Seo's opined limitations in the RFC. *See Gwendolyn*

*F.H. v. Comm'r of Soc. Sec.*, Case No. 3:22-cv-214, 2023 WL 5772796 (S.D. Ohio Sept. 7, 2023)

(holding that the ALJ's failure to articulate how he evaluated the supportability of two medical

opinions was harmless where the RFC contained consistent or more restrictive limitations, and

---

[7] Although the imaging studies were dated 18 months prior, Whalen explained that she was not treating during that time due to lack of insurance and being out of state. Dr. Seo noted in July 2021 that Whalen was experiencing "[w]orsened/progressive arthritis in joints, [with] worsened pain and limiting her activity". (ECF No. 7, PageID #: 438, Ex. 1F at 136). As a result of that encounter, Dr. Seo restarted treatment of Whalen's arthritic pain with pain medication and referred her to surgical review and rheumatology. There is nothing to indicate that Whalen's condition improved since the imaging scans in 2019. For example, x-rays taken on August 25, 2021, upon referral from Dr. Seo for a surgical consult, showed "severe degenerative arthritis of both hips, bone-on-bone." (*Id.*, PageID #: 434, Ex. 1F at 132). Whalen had her right hip was replaced on May 10, 2022, and her left hip replaced on September 6, 2022; both replacements were due to her osteoarthritis (*Id.*, Tr. 1378–80, 1375–76). At the time of the hearing, Whalen had a total replacement of her right knee scheduled. (ECF No. 7, PageID #: 50, Tr. at 23 (citing Ex. 9F).

collecting cases); *see also Wilson*, 378 F.3d at 546–47 (holding that an error in evaluating a treating physician's opinion under the previous treating-physician rule may be "irrelevant" where the ALJ nevertheless made findings consistent with that opinion); *Beery v. Comm'r of Soc. Sec.*, 819 F.App'x 405, 408 (6th Cir. 2020) ("We will treat an ALJ's failure to articulate her reasons for the weight she assigned to a medical source opinion as a harmless error if the ALJ adopted the opinion or made findings consistent with that opinion.").

Third, the goal of 20 C.F.R. § 404.1520c(b)(2) was not otherwise met despite the ALJ's failure to strictly comply with the regulations. *Friend*, 375 F. App'x at 551 (citing *Wilson*, 378 F.3d at 547). "This last circumstance may take the form of an "indirect attack," when the ALJ's analysis of other opinions in the record or of the claimant's ailments calls to question the supportability of the opinion or its consistency with other evidence." *Id.* (citing *Nelson v. Comm'r of Soc. Sec.*, 195 F. App'x 462, 470 (6th Cir. 2006); *Hall v. Comm'r of Soc. Sec.*, 148 F. App'x 456, 464 (6th Cir. 2006)). The key question in determining whether an "indirect attack" satisfies the spirit of the regulatory framework is whether the analysis as a whole permits the claimant and reviewing court to glean a "clear understanding" of the reasons the limitations in an opinion were not adopted. *Id.* The Sixth Circuit has expressly and repeatedly cautioned it will be "the 'rare case' in which a § 1527(d)(2) violation [can be] deemed harmless because the ALJ's analysis met the goal, but not the letter, of the rule." *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 749 (6th Cir. 2007) (quoting *Nelson*, 195 F. App'x at 472); *see also Thaxton v. Comm'r of Soc. Sec.*, 815 F. App'x 955, 960 (6th Cir. 2020) ("[W]e have said that harmless error is saved for the 'rare case' where the ALJ has met the 'goal' of § 404.1527, 'if not meeting its letter.'").

The ALJ did not indirectly attack the supportability of Dr. Seo's opinions within the decision. An ALJ's determination indirectly attacks the supportability of an opinion where an ALJ

"cite[s] specific statements in [a providers'] own treatment notes and examination findings" that undermine that provider's opinion. *Chicora v. Comm'r of Soc. Sec.*, 852 F. App'x 968, 970 (6th Cir. 2021) (citing *Lester v. Soc. Sec. Admin.*, 596 F. App'x 387, 389 (6th Cir. 2015) (holding that the ALJ "reasonably discounted [the treating physician's] medical opinion" where it was "inconsistent with his own treatment notes from the relevant period")). This Court reviewed the ALJ's discussion of the State agency reviewing physicians' opinions and the remainder of the decision in an attempt to trace the path of the decision not to include Dr. Seo's opined limitations in the RFC. As explained above, the ALJ did not cite to specific statements in Dr. Seo's medical records or examination findings that clearly explain how those records and findings undermined Dr. Seo's opinions regarding Whalen's upper and lower extremity push/pull limitations, reaching limitations, or stand/walk limitation.  Thus, the ALJ did not indirectly attack Dr. Seo's opinions within the decision.

Dr. Seo's opinion was not "patently deficient", the ALJ did not include Dr. Seo's opined limitations in the RFC, and the ALJ's decision as a whole did not indirectly attack Dr. Seo's opinions by citing to specific statements in her medical records or examination findings that clearly explained how those records and findings undermined Dr. Seo's opinions. Accordingly, the ALJ's failure to adequately explain the supportability of Dr. Seo's opinion was not harmless error.

### B. The Consistency Factor

The ALJ also failed to apply proper legal standards in expressing her evaluation of Dr. Seo's opinion in relation to the record evidence. The ALJ's determination that Dr. Seo's opinion was unpersuasive was based on a finding that her opinion was "generally" inconsistent with the evidence as a whole. This reasoning is problematic because it contains no explanation for why or how Dr. Seo's opinion was inconsistent with the record evidence. 20 C.F.R. § 404.1520c(b)(2).

The consistency factor requires an ALJ to consider the degree to which a medical opinion is consistent with evidence from other medical and nonmedical sources. 20 C.F.R. § 404.1520c(c)(2). In the ALJ's analysis of Dr. Seo's opinion, she wrote that Dr. Seo's opinion that Whalen's impairments precluded her "from any and all work activity is disproportionate to the previously discussed examination findings and the level of conservative treatment the claimant received during the period at issue" and that "[t]he evidence of record generally does not support the alleged loss of functioning". (ECF No. 7, PageID #: 52, Tr. at 25). These general statements alone do not contain the level of specificity desired by the regulations. Further, after an examination of the "previously discussed" evidence of record and the decision as a whole, this Court cannot trace the path of the ALJ's reasoning in her determination that Dr. Seo's opinion was inconsistent with the totality of the evidence.

An ALJ's determination must be read as a whole. *Emard v. Comm'r of Soc. Sec.*, 953 F.3d 844, 851-52 (6th Cir. 2020); *Crum v. Comm'r of Soc. Sec.*, 660 F. App'x 449, 457 (6th Cir. 2016) (affirming ALJ evaluation of opinion evidence where "[e]lsewhere in her decision, the ALJ laid out in detail the treatment records" undercutting the opinion). Prior to the discussion of Dr. Seo's opinion, the ALJ analyzed the supportability and consistency of the State agency reviewing physicians, Dr. Hughes and Dr. Amiri, and this analysis, in part, contains explanation for the reasons why the ALJ concluded that Dr. Seo's opinions were inconsistent with the evidence of record. However, as explained below, the analysis and decision as a whole fall short with respect to several of Dr. Seo's opined limitations.

For example, the analysis explains why Dr. Seo's opinion that Whalen could stand/walk for a total of two hours in an eight-hour workday is not consistent with the record. Dr. Hughes and Dr. Amiri each opined that Whalen could stand/walk for a total of four hours in an eight-hour

workday. The ALJ adequately explained how Drs. Hughes' and Amiri's stand/walk limitation was consistent with the record by citing to records demonstrating that Whalen had normal gait and coordination (ECF No. 7, PageID #: 51, Tr. at 24 (citing Exhibits 1F at 177 / 3F at 7 / 4F at 64)), "trace" edema of her lower extremities (*id.* (citing Exhibit 3F at 74, 150)), and good range of motion throughout her extremities (*id.* (citing Exhibit 1F at 140)). Although Whalen cites medical evidence that would support Dr. Seo's more restrictive stand/walk limitation, she cites no evidence that the ALJ failed to consider. (*See* ECF No. 8 at 10). It is the ALJ's responsibility to weigh the evidence and determine an RFC, not this Court's. *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389–90 (6th Cir. 1999).

Dr. Hughes also opined that Whalen could occasionally push/pull with her upper and lower extremities, occasionally reach in any direction with her right arm, and could stand/walk for up to fifteen minutes at a time. The ALJ did not adopt these opinions by Dr. Hughes, and, instead, adopted the less restrictive opinion of Dr. Amiri, which did not include these additional limitations. The ALJ did not address the discrepancy between Drs. Amiri and Hughes's opinions about the length of time Whalen can stand/walk at a time or her lower extremity push/pull limitations. (*See* ECF No. 7, PageID #: 52). The ALJ stated that both reviewing physicians' opinion were persuasive and agreed that a reduced range of light work was the "most plausible estimation of her physical capacity." Yet the ALJ failed to address Dr. Hughes's opinion that Whalen could stand/walk for 15 minutes at a time. Although the ALJ referenced that "Dr. Hughes initially found that due to the degenerative condition of the claimant's right shoulder and hips and knees, she has exertional and reaching limitations (Exhibit 2A at 5)", her explanation for adopting Dr. Amiri's restrictions over Dr. Hughes's restrictions refers only to Whalen's shoulder impairment. (*Id.* ("the claimant had had no shoulder examinations since 2019 (Exhibit 1F at 136) and cursory examinations toward the end

of the date last insured provide no basis for further limitations (Exhibit 1F at 130, 136).")). The ALJ does not explain how she adopted Dr. Amiri's restrictions over Dr. Hughes's opinions that Whalen could stand/walk for fifteen minutes at a time or that Whalen should be limited to occasional pushing/pulling with her lower extremity were inconsistent with the record evidence. Thus, the ALJ's analysis of the State agency opinions also fails to explain how Dr. Seo's opinion that Whalen could stand/walk for three to five minutes at a time was inconsistent with the medical evidence.

Further, the decision as a whole does not explain how the ALJ chose Dr. Amiri's less restrictive limitations over Dr. Seo's or Dr. Hughes's opined lower extremity push/pull or stand/walk time limitations. Although the ALJ summarized the evidence of Whalen's conservative treatment, objective scans, and post-date last insured surgeries earlier in her decision, the summary does not explain how she arrived at the conclusion that where the State agency reviewers' opinions differed as to these limitations, she adopted one over the other. *See Hardy*, 554 F. Supp. 3d at 907. The ALJ was required to give a "coherent explanation for [her] reasoning" sufficient to allow a reviewing court to understand how the ALJ arrived at her conclusion and conduct meaningful judicial review. *Lester v. Saul*, No. 5:20-cv-01364, 2020 WL 8093313, at *14 (N.D. Ohio Dec. 11, 2020); *Fleischer*, 774 F. Supp. 2d at 877. This Court cannot trace the path of the ALJ's reasoning.

On the other hand, the Court can trace the path of the ALJ's reasoning regarding her finding that Dr. Seo's reaching limitations[8] were not consistent with the record by reviewing the ALJ's analysis of the State agency opinions. The ALJ specifically addressed why she adopted Dr. Amiri's opined upper extremity limitations over those of Dr. Hughes who limited Whalen to occasional

---

[8] Dr. Seo opined that Whalen could reach in front of her body 5% of the time and never reach overhead.

reaching an any direction. With respect to Dr. Hughes's upper extremity push/pull and reaching limitations, the ALJ supported her finding that no additional push/pull or reaching limitations were warranted by citing to Whalen's lack of shoulder examinations since 2019 (ECF No. 7, PageID #: 52, Tr. at 25 (citing Exhibit 1F at 136)) and that her musculoskeletal range of motion in her extremities was noted as good or normal in March 2019 and again in February 2021 (*id.* (citing Exhibit 1F at 140, 177)). Earlier in the decision, the ALJ cited Whalen's 2019 x-rays, MRI, and CT scans showing "significant bone-on-bone osteoarthritis of the right shoulder with a partial rotator cuff tear (Exhibit 3F at 97, 199)". The ALJ acknowledged that Whalen was offered surgical intervention for her "severe right shoulder arthritis" but explained that Whalen's treatment for her joint pain during the relevant period, had been "entirely conservative" consisting of "steroid packs, topicals, physical/aquatic therapy, epidural injections, anti-inflammatory/narcotic/neuralgic medications, and muscle relaxants (Exhibits 1F / 2F / 3F / 4F)." (*Id.*, PageID #: 50, Tr. at 23). Although Whalen presented evidence that could also support greater limitations as opined by Dr. Seo, the ALJ's decision as a whole adequately explained the ALJ's conclusion that additional upper extremity push/pull and reaching restrictions were not warranted.

Finally, as noted previously, Dr. Seo listed several additional manipulative and functional limitations that were not included in the RFC and not included by the State agency reviewing physicians. When addressing medical source opinions, SSR 96-8p provides that, "[i]f the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted." *Brewer v. Comm'r of Soc. Sec.*, No. 1:23CV1241, 2024 WL 1683666, at *8 (N.D. Ohio Mar. 12, 2024), *report and recommendation adopted*, No. 1:23-CV-1241, 2024 WL 1676856 (N.D. Ohio Apr. 18, 2024) (quoting SSR 96-8P at *7). The ALJ noted that Whalen could make a full fist bilaterally (*id.* at PageID #: 51 (citing (Exhibit 1F at 140, 177)), and that

Whalen's lower extremity edema had been noted as "trace" (*id*. (citing Ex. 3F at 74, 150)).[9]  The ALJ does not at any point in the decision address the remaining manipulative and functional limitations opined by Dr. Seo. Instead, the ALJ stated that "[t]he evidence of record generally does not support the alleged loss of functioning" and that "[t]here is no evidence warranting additional limitations beyond those specified herein." (*Id.* at PageID #: 52). Without further belaboring the point, as stated above, the ALJ's failure to address at least one of these opinions – that Whalen's impairments would cause her to be off-task 25% of the time or more – is not harmless error as that limitation would have been work preclusive. *See Russ*, 2021 WL 3709916, at \*10 (remanding where the ALJ failed to explain how a limitation that would have been work preclusive was inconsistent with the record evidence).

 Thus, this Court finds that the ALJ failed to adequately explain why Dr. Seo's opinion was inconsistent with the record evidence.

### C. Conclusion

This Court finds that the ALJ failed to adequately explain why she concluded that Dr. Seo's opinions were not supported and inconsistent with the record as a whole. Supportability and consistency are separate factors. *Vansickle v. Comm'r of Soc. Sec. Admin.*, No. 5:23-CV-02229, 2025 WL 953180, at \*4 (N.D. Ohio Mar. 31, 2025) (citations omitted); *Vaughn v. Comm'r of Soc. Sec.*, No. 1:21-CV-01373, 2022 WL 3280081, at \*5 (N.D. Ohio May 31, 2022), report and recommendation adopted, No. 1:21-CV-001373, 2022 WL 3998848 (N.D. Ohio Sept. 1, 2022) (distinguishing the factors of supportability and consistency). An ALJ may discuss one adequately but not the other, thus requiring remand. *See, e.g.*, *Amber N. M.*, 2024 WL 5198685, at \*7;

---

[9] This Court notes the ALJ failed to acknowledge other record evidence of swelling (*id*., Ex. 1F at 181), limping (*id*., Ex. 1F at 132), inability to grasp (*id*., PageID #: 81 (difficulty opening containers, grooming, dressing, buttons, zippers)).

*Decorian P. R. v. Comm'r of Soc. Sec. Admin.*, No. 1:22-CV-657, 2024 WL 1155941 (S.D. Ohio Mar. 18, 2024); *Goodman v. Soc. Sec. Admin.*, No. 1:22-CV-00995, 2024 WL 623894, at *15 (N.D. Ohio Feb. 14, 2024). Remand is appropriate when the ALJ's decision is unsupported by substantial evidence or when the ALJ failed to follow the Administration's own regulations, and that shortcoming prejudiced the plaintiff on the merits or deprived the plaintiff of a substantial right. *Bowen*, 478 F.3d at 746; *Cole v. Astrue*, 661 F.3d 931, 939–40 (6th Cir. 2011) (An "ALJ's failure to follow agency rules and regulations 'denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified based upon the record.' ") (quoting *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399 (6th Cir. 2009)).

The ALJ failed to follow agency rules and regulations by failing to properly address the supportability and consistency of Dr. Seo's opinion. The ALJ's boilerplate language failed to build an accurate and logical bridge between the evidence and her conclusion that Dr. Seo's opinion was not supported and substantially inconsistent with the medical record. *Todd v. Comm'r of Soc. Sec.*, No. 3:20-CV-1374, 2021 WL 2535580, at *8 (N.D. Ohio June 3, 2021), *report and recommendation adopted*, No. 3:20 CV 1374, 2021 WL 2530846 (N.D. Ohio June 21, 2021) (citing *Fleischer*, 774 F. Supp. 2d at 877). The ALJ's error is not harmless because, without fuller explanation, this Court cannot engage in meaningful review of the ALJ's decision. *Id.* (citing *Blakley*, 581 F.3d at 409). The fact that the ALJ's ultimate conclusion may be supported by substantial evidence, is not enough. *See Blakley*, 581 F.3d at 410 (stating that substantial evidence does not excuse non-compliance with 20 C.F.R. § 404.1527(d)(2)). Accordingly, remand is necessary.

Having determined that remand is necessary to properly analyze Dr. Seo's medical opinion in accordance with 20 C.F.R. § 416.920c(b)(2), this Court does not address Whalen's remaining

arguments.

## VI. Recommendation

Based on the above, this Court RECOMMENDS that the Commissioner's non-disability

determination be OVERRULED and that this matter be REMANDED pursuant to Sentence 4 §

405(g).

Dated: May 21, 2025

s/ *Carmen E. Henderson*
CARMEN E. HENDERSON
U.S. MAGISTRATE JUDGE

---

## OBJECTIONS

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after being served with a copy of this document. Failure to file objections within the specified time may forfeit the right to appeal the District Court's order. *See Berkshire v. Beauvais*, 928 F.3d 520, 530-31 (6th Cir. 2019).